UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| EDWARD JAMES CROMER #211902 a/k/a BU'CAY SHABAZZ, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:08-cv-203 |
| v. | ) ) | HON. ROBERT HOLMES BELL |
| P. CARBERRY, et al., | ) ) ) | **OPINION** |
| Defendants. | ) ) | |
| _____ | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Carberry, Andrews, Lancour, Bergh, Miron, Rondeau, Frontera, Cheatham, and Contreras. The Court will serve the complaint with regard to Plaintiff's equal protection claims against Defendants Santure, Bowerman, Killips and Riley.

**Discussion**

  I.  Factual Allegations

Plaintiff Edward James Cromer a/k/a Bu'cay Shabazz, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Case Manager P. Carberry, Mail Room Officer S. Andrews, Guard V. Killips, Guard T. Lancour, Guard D. Bergh, Guard B. Bowerman, Guard C. Miron, Guard Unknown Santure, Guard M. Rondeau, Chaplain G. Riley, Doctor Unknown Frontera, Health Care Supervisor Unknown Cheatham, and Inspector Unknown Contreras.

Plaintiff alleges in his complaint that he is a member of the Nation of Islam and has been registered as a Muslim since 1993. Plaintiff states that a Muslim religious name is central to his religious creed. On January 19, 2007, Defendant Bowerman called Plaintiff "Ed" during religious services, causing other inmates to go into a "frenzy." Plaintiff saw this and quickly called for prayer. On January 20, 2007, Defendant Bowerman stated that Plaintiff should not be out of the hole because Plaintiff does not like White women. Defendant Bowerman then falsified a major misconduct ticket on Plaintiff for "disobeying a direct order" in order to have Plaintiff placed in solitary confinement. Plaintiff claims that Defendant Bowerman never mocked the religious names of prisoners who are Arab, Jewish, or who belong to Christian Identity and that Defendant Bowerman is attempting to spark violence with the Muslims and spread religious bigotry.

Plaintiff alleges that on June 22, 2007, Defendant Bowerman delivered unsealed legal mail involving a pending civil action. Plaintiff confronted Defendant Bowerman about the legal mail, but Defendant Bowerman refused to respond. On June 23, 2007, Defendant Bowerman falsified a major misconduct, stating:

> While on B-wing across from prisoner Cromer 211902 Cell 216, I could see Prisoner Cromer staring at Killips licking his lips and making rude gestures of sexual nature with his tongue towards [Defendant] Killips. [Defendant] Killips had her back towards Cromer door. I told prisoner Cromer to stop doing this and he said, "I can look if I want to."

(*See* Plaintiff's complaint, ¶ 23.) Plaintiff was found guilty following a hearing and was sentenced to 30 days loss of privileges. Plaintiff claims that during the preceding six months, Defendant Bowerman was heard stating that she hated men. Plaintiff further states that he has a protected right to look at a white woman.

On June 23, 2007, Defendant Santure told Plaintiff that if he wanted to look at White women, Defendant Santure would "kick [Plaintiff's] ass." Defendants Santure, Bowerman, Killips and other prison officials stood in front of Plaintiff's cell yelling racial and disparaging remarks. Immediately after, Defendant Santure falsified a misconduct ticket for "threatening behavior." On August 15, 2007, Defendant Bowerman told Plaintiff that if he wrote Defendants up, Plaintiff would find out that Defendants wrote better, that they ran the U.P. and that Plaintiff was not to look at Defendant Killips. Defendants had a practice of making black inmates bow their heads toward the ground in the presence of white female staff members.

In February of 2007, Plaintiff's mother sent him $30.00 to be used as a down payment for typewriter repairs to be paid to Lake Superior Inc. (LSI). On May 21, 2007, Officer Olger came to Plaintiff's cell with a letter from LSI. This letter was not in an envelope and stated "Cromer was unhappy with the prices, typewriter is being returned unrepaired." Plaintiff states that he was never given an estimate of the repair. Plaintiff wrote to LSI three times seeking an explanation, but he never received a response. Plaintiff believes that Defendants Bergh and Andrews deprived him of

his mail from LSI. Plaintiff claims that when he attempted to contact LSI, Defendants Bergh and Andrews threatened him with a major misconduct. Plaintiff's mother called LSI complaining about the status of the requested repair and was told that LSI no longer did business with LMF. However, LSI sent an estimate of the repair cost for Plaintiff's typewriter. Plaintiff states that Defendants had previously planned to destroy Plaintiff's typewriter and blame him for it, but had not had the opportunity. Defendant Rondeau had stated in the past that he "was going to destroy Plaintiff's typewriter because Plaintiff was using it to recruit by corresponding with Muslims," and that Defendant Rondeau also did not approve of the fact that Plaintiff stored legal research on his computer.

On June 8, 2007, Case Manager R. Johnson Plaintiff received a hearing in which it was determined that his typewriter was not contraband and had been returned from LSI unrepaired. On June 23, 2007, Defendant Bowerman issued a property slip for the typewriter, which did not reflect that it had been broken. However, later that day, Officer Albright issued a minor misconduct ticket for a cracked cassette tape. When Plaintiff was released from administrative segregation, he found a notice of intent written by Defendant Carberry at the bottom of a duffel bag of non-allowable administrative segregation property, which falsely stated that Plaintiff had received a hearing on his typewriter on July 12, 2007. On February 20, 2008, Plaintiff filed an action in small claims court against Defendant Carberry for destroying his typewriter. Defendant Carberry wrote a notice of intent stating that the typewriter was broken.

On June 4, 2007, Defendant Miron falsified a misconduct on Plaintiff for improperly passing an item to prisoner Overton #253325. The following day, Defendant Miron told Plaintiff that Overton would beat the misconduct ticket, but that Plaintiff would be kept on loss of privileges.

As predicted by Defendant Miron, Plaintiff was found guilty of his misconduct, but prisoner Overton was not. On June 15, 2007, Defendant Miron illegally removed two pages of legal mail without a hearing.

Plaintiff also claims that Defendants Carberry and Contreas engaged in a campaign of breaking down enemies, such as Plaintiff, by falsifying a string of major and minor misconduct tickets, force feeding by not allowing prisoners enough time to eat their meals, and getting "in Plaintiff's face" and yelling, shouting and spitting. As a result, Plaintiff developed ulcers, inflammation, hernias, excessive bleeding from his rectum, dizziness, gallstones and constipation. Plaintiff states that Defendant Contreas used intimidation tactics in order to force Muslims to denounce their religious beliefs and avoid religious meetings. On September 6, 2007, Defendant Frontera wrote a detail so that Plaintiff could lift weights and use the gym as part of his treatment for high blood pressure, high cholesterol, atrophic muscle mass, liver disease, and aphagia (the inability or refusal to swallow). Plaintiff alleges that on September 5, 2007, Plaintiff was rushed to the prison infirmary because his throat had swollen up after being forced to eat to quickly. Defendant Frontera subsequently ordered that Plaintiff be given a full 20 minutes to eat his meals.

Plaintiff asserts that as a result of being shot three times in 1986, he suffers from drop foot and requires high top soft leather crepe soled shoes, as well as an "AFO Brace." However, Defendant Frontera discontinued Plaintiff's special accommodation for the high top shoes and Plaintiff was required to wear state issue shoes. Plaintiff's state issue shoes wore out after two weeks because of his gait, and Plaintiff began to suffer from back pain and spasms.

Plaintiff claims that Defendant Riley told him to read the Bible or the Koran instead of the "Supreme Wisdom lessons" which had been purchased from the prior prison chaplains.

Plaintiff explained that the Bible was written to reform white people and the Koran was written to reform Arabs, but the Supreme Wisdom lessons came from God to assist black people. The Supreme Wisdom lessons were sent to North America in 1910 by Alphonso Shabazz, one of the founders of the Nation of Islam. Plaintiff contends that the Supreme Wisdom lessons are controversial because they provide the black man with a method to trace himself back to a time of universal greatness. Plaintiff states that Defendant Riley refused to allow Plaintiff to have copies of the Supreme Wisdom lessons made from the Supreme Wisdom lessons belonging to another prisoner, but that Defendant Riley provides such copies of Christian, Shiite, and Sunni materials to prisoners.

Plaintiff is STG (security threat group) II and cannot have a prison job, so is unable to purchase his own copy of the Supreme Wisdom lessons. Defendant Riley states that to provide a copy of the Supreme Wisdom lessons would be a violation of federal law. However, Defendant Riley admits that he violated federal law several times. Plaintiff claims that Defendant Riley is depriving him of the Supreme Wisdom lessons in order to discriminate against him on the basis of his race.

Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

    II.    <u>Failure to state a claim</u>

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a

claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that he received major and minor misconduct tickets in violation of his procedural due process rights. Plaintiff claims that as a result of the misconduct convictions, he was subject to loss of privileges and segregation.[1] The Court concludes that this claim is without merit on the basis of *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995). In *Sandin*, the Plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct. *Sandin*, 515 U.S. at 474, 115 S. Ct. at 2294. In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976). *Sandin*, 515 U.S. at 483, 115 S. Ct. at 2300 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. *Sandin*, 515 U.S.

---

[1] Because Plaintiff is serving a life sentence, he is not entitled to earn disciplinary credits.

at 483-484, 115 S. Ct. at 2300 (internal citations omitted). In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300. However, such restraints are rare and do not include, for example, transfer into solitary confinement. *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301. Nor does placement in administrative segregation normally constitute such a hardship. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995). In addition, Plaintiff has no right to prison employment or to early release on parole. *Greenholtz v. Inmates, Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989). Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated. *Meachum*, 427 U.S. at 223-29[2]; *Olim v. Wakinekona*, 461 U.S. 238 (1983).

      A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791. Pursuant to *Sandin*, "a liberty interest determination is to be made based on whether it will

---

[2] In *Meachum v. Fano*, 427 U.S. 215, 223-229 (1975), the Court held that transfers between prisons of different severity, such as between a medium security prison and a maximum security prison, did not deprive the prisoner of liberty within the meaning of the Due Process Clause.

affect the overall duration of the inmate's sentence, and there is no evidence here that the segregation will impact Plaintiff's sentence." *Jones*, 155 F.3d at 812. The Sixth Circuit has determined that a prisoner's placement in administrative segregation for over a year is not an atypical or significant hardship as to create a liberty interest in due process. *Mackey v. Dyke*, 111 F.3d 460, 461-63 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997). Because Plaintiff in this case fails to allege facts constituting an "atypical and significant hardship," Plaintiff's claim that he was denied procedural due process is without merit.

Furthermore, Plaintiff's complaint, as well as the attached documents, establish that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70, 94 S. Ct. 2963, 2981 (1974); *Franklin v.*

*Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). In this case, Plaintiff attaches copies of hearing reports on his misconduct charges which show that he had the opportunity to present evidence in support of his claims. Therefore, Plaintiff's due process claims are properly dismissed.

Plaintiff claims that Defendants deprived him of his typewriter, thereby violating his Fourteenth Amendment due process rights. The Due Process Clause does not prohibit deprivation of property by the state; instead it prohibits such deprivations without *due process of law*. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), overruled in part on other grounds *Daniels v Williams*, 474 U.S. 327 (1986).

A plaintiff alleging infringement of property rights must show that the deprivation was caused by action taken pursuant to established state procedures. *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-436 (1982). Plaintiff herein fails to make the required distinction between challenging the "established state procedure" itself and the failure of the state employee to follow that procedure. *Id*. If the official performing the state procedure fails to follow the state procedure or conform his conduct to state law, the plaintiff's injury is the result of a "random and unauthorized act" which the state was unable to foresee and thus prevent. In *Parratt*, the Supreme Court held that no procedural due process violation occurs when the deprivation is the result of a "random and unauthorized act," unless the state failed to provide the plaintiff with an "adequate post-deprivation remedy."

> Application of the principles recited above to this case leads us to conclude the respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the state to follow established state procedure. There is no

>contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation.

*Parratt*, 451 U.S. at 543.

The Sixth Circuit has held that in procedural due process claims brought pursuant to 42 U.S.C. § 1983, the "Parratt doctrine" allows dismissal where the state provides an adequate postdeprivation remedy if:

>1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416-417 (6th Cir. 1996). In cases where these conditions are present, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *Copeland*, 57 F.3d at 479; *Pilgrim*, 92 F.3d at 417.

Plaintiff attaches a copy of a May 29, 2007, letter from Lake Superior Business Machines and Printer Cartridges, Inc., which states:

>In regards to your letter I have sent the estimate for your Brother ML500 twice. We received your typewriter and on 2/27/07 for the second time and sent out the estimate for $132.06, which we never heard a response on. Then we received your last letter dated 5/13/07 stating that you still have not received the estimate and you were unhappy with the prices, so I sent the estimate out again, but this time with your typewriter. I am sorry as of May 1, 2007 we no longer service any typewriters for prisoners. A letter was sent to your facility on April 10, 2007. I am sorry you were unsatisfied with our company and for any problem this has caused you.

(*See* Plaintiff's Exhibit 9.)

Plaintiff also attaches a copy of the administrative hearing report on this issue dated June 8, 2007, which states that on May 30, 2007, an employee from Lake Superior Business Machines and Printer Cartridges, Inc. called the facility and stated that they did not have any further business with Plaintiff and did not wish to be contacted by him in the future. Plaintiff was instructed not to contact Lake Superior Business Machines and Printer Cartridges, Inc. in the future or he would be written a major misconduct for disobeying a direct order. (Plaintiff's Exhibit 10.) Also attached to Plaintiff's complaint is an administrative hearing report dated July 12, 2007, in which Defendant Carberry states that Plaintiff's typewriter was sent out for repair and returned to the prison as not being able to be repaired. On June 8, 2007, Assistant Deputy Warden Rutter allowed Plaintiff to show him that his typewriter was in working order and Plaintiff was allowed to take the typewriter. Then on June 11, 2007, Plaintiff sent a kite to the Assistant Deputy Warden which stated that the typewriter was broken and that he wanted the Prisoner Benefit Fund to pay for it. Defendant Carberry determined that Plaintiff's typewriter was contraband. (Plaintiff's Exhibit 12.) Plaintiff also appears to have filed a grievance regarding this issue, and has attached a copy of his step II appeal to his complaint. (Plaintiff's Exhibit #16.) Plaintiff also filed an action regarding the loss of his typewriter in small claims court to no avail.

Plaintiff in this case has not demonstrated the absence of adequate state remedies for Defendants' alleged misconduct. The fact that his attempt to be reimbursed was unsuccessful or that the remedies provided by the state do not provide all the relief which may be available under 42 U.S.C. § 1983 does not mean that the state remedies are ineffective. *Parratt*, 451 U.S. at 544. Therefore, pursuant to *Parratt*, Plaintiff's due process claims should be dismissed.

Plaintiff claims that as a result of being shot three times in 1986, he suffers from drop foot and requires high top soft leather crepe soled shoes, as well as an "AFO Brace." However, Defendant Frontera discontinued Plaintiff's special accommodation and Plaintiff was required to wear state issue shoes. Plaintiff's state issue shoes wore out after two weeks because of his gait, and Plaintiff began to suffer from back pain and spasms. Plaintiff claims that the discontinuation of his special accommodation violated his rights under the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the

detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis

results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff attaches a copy of a January 29, 1996, special accommodation notice indicating that Plaintiff is to have a AFO brace and high top shoes. (Plaintiff's Exhibit #22.) According to a July 3, 2006, memorandum to Plaintiff from Ruby Cheatham, R.N., Plaintiff was seen by the doctor on June 23, 2006, and it was determined that Plaintiff did not have a medical need for high top state shoes. Therefore, the special accommodation for the shoes was discontinued. (Plaintiff's Exhibit #23.) It does not appear as if the accommodation for the brace was discontinued.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997). Therefore, Plaintiff's Eighth Amendment claim is properly dismissed.

Plaintiff alleges that on June 22, 2007, Defendant Bowerman delivered unsealed legal mail involving a pending civil action. Plaintiff confronted Defendant Bowerman about the

legal mail, but Defendant Bowerman refused to respond. Plaintiff claims that this violated his First Amendment rights. Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). The Michigan Department of Corrections may require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson*, 667 F. Supp. 467, 473 (W.D. Mich. 1987), *appeal dismissed*, 841 F.2d 1126 (6th Cir. 1988). Further, a prison can restrict the opening of special mail in the presence of the inmate to those situations wherein the sender is identified as an attorney and the envelope makes a specific restriction on the opening. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). With regard to mail from an inmate's attorney, prison officials have a right to open and inspect such mail for contraband. However, they may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993); *see also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (court abandoned the *per se* rule that the Constitution requires that the opening and inspection of legal mail be in the presence of the inmate). In this case, Plaintiff fails to allege that the mail in question was marked confidential or that he had requested special treatment of his legal mail. Therefore, this claim is properly dismissed.

Finally, Plaintiff claims that his equal protection rights were violated by Defendants Santure, Bowerman, Killips and Riley. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or

national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Plaintiff states that a name is important to members of the Nation of Islam and on January 19, 2007, Defendant Bowerman called Plaintiff "Ed" during religious services, causing other inmates to go into a "frenzy. On June 23, 2007, Defendant Santure told Plaintiff that if he wanted to look at White women, Defendant Santure would "kick [Plaintiff's] ass." Defendants Santure, Bowerman, Killips and other prison officials stood in front of Plaintiff's cell yelling racial and disparaging remarks. Plaintiff claims that Defendant Riley told him to read the Bible or the Koran instead of the "Supreme Wisdom lessons" which had been purchased from the prior prison chaplains. Plaintiff explained that the Bible was written to reform white people and the Koran was written to reform Arabs, but the Supreme Wisdom lessons came from God to assist black people. The Supreme Wisdom lessons were sent to North America in 1910 by Alphonso Shabazz, one of the founders of the Nation of Islam. Plaintiff contends that the Supreme Wisdom lessons are controversial because they provide the black man with a method to trace himself back to a time of universal greatness. Plaintiff states that Defendant Riley refused to allow Plaintiff to have copies of the Supreme Wisdom lessons made from the Supreme Wisdom lessons belonging to another prisoner, but that Defendant Riley provides such copies of Christian, Shiite, and Sunni materials to prisoners.

Because Plaintiff in this case has alleged that he was treated differently from other prisoners on the basis of his religion and race, his equal protection claims against Defendants Santure, Bowerman, Killips and Riley may not be dismissed upon initial screening.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Carberry, Andrews, Lancour, Bergh, Miron, Rondeau, Frontera, Cheatham, and Contreras will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint with regard to Plaintiff's equal protection claims against Defendants Santure, Bowerman, Killips and Riley.

An Order consistent with this Opinion will be entered.


Dated:  March 19, 2009                                           /s/ Robert Holmes Bell
                                                                 ROBERT HOLMES BELL
                                                                 UNITED STATES DISTRICT JUDGE